JAC BUILDING & CONSTRUCTION CO., INC., Respondent, *v.* MATTEO NICCOMINI and Others, Appellants.

First Department, December 14, 1923.

**Liens — mechanic's lien — action to enforce lien — evidence shows that building contract was not substantially performed by plaintiff — plaintiff cannot recover in absence of proof of cost of proper substitution or reason for deviating from original contract.**

In an action to enforce a mechanic's lien against a building which was constructed by the plaintiff under a contract with the defendant the complaint should be dismissed where the evidence shows failure of substantial performance by the plaintiff, and there is no proof of the cost of making the proper substitutions nor any reason shown for failure to comply with the original requirements of the contract.

APPEAL by the defendants, Matteo Niccomini and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of February, 1923, upon the decision of the court rendered after a trial at the New York Special Term.

*Man & Man* [*George E. Morgan* of counsel; *Henry H. Man* with him on the brief], for the appellants.

*John L. Bernstein*, for the respondent.

McAVOY, J.:

The amount found in the judgment here, in a suit upon a mechanic's lien, is claimed to have been erroneously awarded because of the plaintiff's failure to substantially complete the building contracted for according to the plans which were the basis of the plaintiff's claims. The contract provided that the plaintiff was to make certain alterations according to plans and

specifications for transforming a house at 29 Downing street, Manhattan, into a garage which consisted in removing the partition, flooring and chimney of the building, tearing down the front wall and rebuilding the building, concreting all the floors from the building line to the end of the new extension, and whitewashing all the walls and ceiling of the proposed garage, connecting the leader of the new extension to the sewer, supplying a galvanized sink in the garage, for which defendants agreed to pay the sum of $10,300 in five installments, as the work and materials were performed and furnished, the final payment to be made three months after the completion of the job. The contract had been originally let on plans and specifications describing in detail the nature of the work to be done, materials to be furnished and the methods of carrying out the contract. The original estimate on these plans and specifications was $13,300, but this amount being larger than the defendants desired to pay, plaintiff's assignor, one Cerra, submitted a second estimate for the present contract price of $10,300, and this was the amount in the contract which was signed. Cerra admitted at the time that he gave the figure of $13,300 he intended to proceed according to the original plans and specifications, and he said the plans were changed only by agreeing that he was not to build a wall in the cellar and that the material to be used under the new arrangement was to be " all of the best second hand " so as to come down to the price of $10,300. Plaintiff claimed that the contract which was introduced in evidence by him and for which he agreed to do the job for $10,300, superseded the original specifications, and that he was not bound by the specifications which were originally filed with the building department. Even assuming that this be accepted as the ultimate agreement between the parties, from his own testimony the following is the condition in which he left the building as compared with the manner in which the contract required him to complete the work. ·

The walls of the building were, under the contract, to be white-washed, yet he used in the construction of those walls brick taken from an old chimney — bricks saturated with soot — from which bricks the soot penetrated through the whitewash. The plans called for iron beams, according to Mr. Cerra. These he admits he did not use. The plans called for an extension. This he admits he did not build. The binding used in the construction of the walls was lime mortar, but the filed specifications call for cement mortar. His excuse for using lime mortar was, " Nobody stopped me." The use of lime mortar was contrary to the contract, and if by its use plaintiff substantially performed the contract which it must have done to recover, the burden of so proving

rested upon it. , If he found that a piece of wood was not of sufficient length for the purpose for which it was desired, he made it so by nailing on an additional piece.

He was to build the concrete wall of concrete blocks, but upon the giving out of blocks, he threw in pieces of wood and concrete, and in building the brick wall, running out of brick, he used concrete blocks.

Though the building was to be a garage yet the floor was so constructed that water necessarily used for washing the trucks failed to drain off and remained in pools.

The plaintiff's attention was at once called to this fault, and Cerra sought to remedy it. He testified, " I put on cement again, level it up with cement," but when he saw the floor on the Saturday prior to the trial, it still failed to properly drain.

He testified: " A. Just around where I put the cement was scratched out some pieces of cement, those patches I make, and a little drain water lay there."

The witness Dahlem made a test as to this drainage by throwing a pail of water on the floor near one of the two catch basins. As to what he observed, he testified: " A. It [the water] went down, but of course there wasn't perfect drainage. The floor was evidently damaged by usage and the drainage was somewhat disturbed, but most of the water drained through the basin."

At the very beginning water remained in pools on the floor and still did so at the end.

The plaintiff offers the explanation through its witness Cerra that because a sink was omitted the catch basin was also omitted. The defendants, however, deny that this sink was omitted with their consent. In any event there should have been proper drainage.

These are the most striking failures of performance. Many others will be found in the testimony.

There can hardly be a difference of opinion that this testimony shows an entire failure of substantial performance of the contract.

The proof shows that the defendants have never been allowed to put motor cars containing gasoline inside the building which they had built for the purposes of a garage.

The admitted non-compliance with the terms of the contract, especially the admission that the best of second-hand material was only partly furnished, and the testimony as to the general character of the work, show such a failure of substantial performance as to demand a dismissal of the complaint and a reversal of the judgment.

That there was no substantial compliance with the contract under which the plaintiff agreed to do the work specified therein

under the plans referred to in that contract and in accordance with the specifications filed in the building department, for which work the defendants were to pay $10,300, does not seem to be open to dispute. The evidence to this effect is clear and explicit in its chief features. It stands uncontradicted; is admitted by the president of the plaintiff, Mr. Cerra, under whose supervision the work was done, and there is no denial by any of the plaintiff's witnesses of the failure to perform according to the terms of the contract in a great number of its essential terms.

This failure of substantial compliance prevents plaintiff from recovering anything in this action, since it has not shown the cost of making the proper substitutions, nor any reason for omitting the original requirements.

We think the judgment should be reversed, with costs, and the complaint dismissed, with costs, and findings settled in accordance with this opinion.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.